The next case today is Francisco Almeida-Leon et al. v. WM Capital Management, Inc. Appeal Number 191765 and Tenerife Real Estate Holdings LLC v. WM Capital Management, Inc. Appeal Number 191766. Mr. Barrios, you may proceed. Good morning. Again, I'd like to set aside, if the Court permits, three minutes for a rebuttal. Yes. Thank you, Your Honor. Like I stated, today we speak on behalf of the three original voluntary plaintiffs, Francisco Almeida, Juan Almeida, and Ms. Wanda Cruz. They have placed on our hands their rights in trust through a mandate that establishes fiduciary duties to them, to the Court. And a fiduciary, generally, a fiduciary has the burden to establish the inherent fairness of his actions that he has been established by the Supreme Court of the few decades. That is 308 U.S. 295. We mention this because it is the same nature of trust that was placed by my clients in the hands of assignee. They turned over their rights in trust for in mutual agreement disposition through public sale and the gist for distribution of the proceeds. And the gist of this case is that that trust has been systematically betrayed during over six years now, since July 28, 2014. This Court, on November 2018, already addressed this case. Honorable Justice Howard stated that it is in the that the public interest requires that this case be specially attended and appointed a specific judge at Woodcock to attend the case. So this Court has already provided special attention to the case as it impacts public interest. The reasons for which public interest is impacted, Justice Howard will discuss among yourselves. It did not disclose, but the track record of the concatenation of fraudulent conduct, I think, speaks loudly for the reasons underlying that decision. Now, in this case, there have been three final judgments. That are binding, each one deciding that WM Capital has been demanding what it is not entitled to under the contract. Those three judgments are in docket 288 in this case, in docket 108-2, pages 9 to 25, and the judgment by the Court of Appeals of Puerto Rico, docket 178. Now, a fourth judgment has been added, and it was informed to this Court, is dated June 30, 2020, after the deal was in progress. It was by the Court of Appeals of Puerto Rico in case KLAN-2019-01350. We submitted a translation as requested by this Court. That judgment itself, it was a Court resolution, decrees that the appeal taken by WM Capital from the judgment dated January 17, 2018, which is, as I stated, in docket 108-2, was, in fact, a judgment, and that the writ was, in fact, an appeal. Therefore, now it has been finally decreed by the Court of Appeals of Puerto Rico that said decree dated January 17, 2018, is a binding judgment. The Court has the resolution, and all three judgments. Now, the three judgments have not been sufficient. Under the full faith and credit and 28 U.S. Code 1738, one would have been plenty. Now... Counselor, the last judgment from the Puerto Rico Court of Appeals, what are you saying it says about your rights and WM Management? Because I'm not following you. Yeah, the decree was labeled a resolution. We had appealed from a statement by the Court of First Instance in Puerto Rico, which echoed Judge Woodcock's statement that it was mere dicta, the statement, the decree of January 17, 2018. The Court of Appeals in Puerto Rico, on June 30, 2020, decided that our writ was not an appeal because what was an appeal was the writ filed by WM Capital from January 17, 2018, because that was an appeal because that resolution was in fact a judgment because it was deciding the right to intervene as a matter of right. So it necessarily had to address in the merits the substantive rights to intervene in the case. So that is why I understand that that decree establishes that the prior one was a judgment and it is binding. Have I answered your question, Justice Thompson? Well, what difference does that make to your case before us? Well, if the courts of Puerto Rico apply and recognize that as a final judgment that is binding on the full faith and credit, it will have ended the controversy as of January 17, 2018, because the controversy is replaced by the adjudication. Therefore, jurisdictionally, there has been no case for controversy since January 17, 2018, and I think this Court respectfully would be bound to honor that because the courts of Puerto Rico do give binding effect to that judgment. I'm still not lost. I thought you brought this lawsuit, right? Yes, Your Honor. And as I understand it, one of your clients was subject... WM had a... or rather the bank had a judgment against one of your clients. That is correct. And the parties got together and made an agreement that basically the underlying certain assets that your clients owed would be sold and used to pay off the judgment. Certain assets. There is dispute as to which, but yes. And so I don't... as I understand it, the bank then sold its position to WM, and you want to hold that... you want us to hold that that ends the agreement to sell. You can pay WM what it paid the bank and acquire all of WM's rights that it got from the bank, and therefore the whole thing is over. That's what I understand. That is called redemption. Yes, Your Honor. But what they sold to the bank included... the bank sold its rights under the agreement. Which includes an undivided participation in certain mortgage notes and the sharing of the right to dispose, which is one of the sticks of the right that is called property. So they were sharing the rights. The whole purpose of the agreement was to sell the assets to pay off the bank's judgment. If we took your argument, the judgment wouldn't get paid off. Negative. It has been paid off because redemption pays in full under the laws of Puerto Rico. We did pay in full under the redemption law because they're not entitled to a penny more than what they paid. We did reimburse that. How are you paying in full under the agreement as opposed to the notes? Redemption. The original assignee sold his right for three cents on the dollar, and those three cents on the dollar were reimbursed, specifically complying with all the requirements of the redemption law of Puerto Rico. And there is no doubt that there was community property between assignee and plaintiffs. Therefore, all requirements for redemption have been made. They have been paid, and plaintiffs are subrogated. They own what is the 2014 agreement. You're not answering my question. My question has to do with the agreement itself. That's a contract. The bank had certain contractual rights under that agreement. The bank's contractual rights under the agreement were not co-owned assets. They were its sole contractual rights, which it then assigned to WM. Negative. A contract is property, and we developed that under the briefs. I think the case is Lynch v. U.S., and we shared that contract. The agreement itself, pursuant to which everything was to happen, are you saying that was property that was co-owned by the parties to the contract? Yes. The contract is property. Lynch v. U.S. is citing the materials. Well, the bank's interest in the contract may be its property, but they're not co-owned. Well, it's community property. That is precisely the error that was incurred by the district court. Co-ownership is not limited to fee simple. The sharing of any part of a bundle of rights called property is community property. Let me ask it this way. You and I make a contract right now. I'll buy your car for $10,000. You'll sell me the car for $10,000. We're going to close tomorrow. We sign that contract. Is there any co-owned property here? We both have an interest in the car. One to sell, one to purchase. If you go on and sell that right to acquire the car for $0.03, and I reimburse you $0.03, that would have been redemption of the contract itself. Yes. We both share rights under the contract. One to acquire, the other one to sell. Sure. So I think what you're saying we should hold that every contract in Puerto Rico is property that is co-owned by the two contracting parties? Negative. It only fits an executive contract and has not been completely performed. I don't understand. If they are mutual considerations that are required to be exchanged, and one of the parties disposes of his part of the contract for de minimis consideration, the argument would be that it continues to be bound, even though the other party disposed of the contract and walked away from it for $0.03? Is your bottom line position that WM is only entitled to be compensated for the $0.03 on the dollar and not the whole dollar? That is the law of Puerto Rico. It's called redemption. It's part of what is defined as property. It's a constitutional right protected by the Constitution of the United States and the laws of Puerto Rico. Yes, Your Honor. Thank you. And you have reserved some time? Yes. And we'll hear from Mr. Maillard now. May it please the Court, Attorney Haider Maillard on behalf of WM Capital. Your Honors, this is a case of simple contractual interpretation. Nothing more, nothing less. At issue is an agreement for the satisfaction of a judgment against Juan Almeida. And under that agreement, signed by Juan Almeida, his brother Francisco, white conjugal partnership, and their company, Tenerife, they assigned for payment of that judgment four mortgage notes, not three, four mortgage notes. I'm sorry. I'm sorry. I don't mean to interrupt, but Chief Judge, could you get Mr. Perez to shut off his camera, please? Mr. Berrios, could you mute your video, please? Thank you. Yes. These four mortgage notes would be foreclosed on in a public sale. That property in Kennedy Avenue here in Puerto Rico, after it is sold at a foreclosure sale, the proceeds from that sale, according to the letter of the contract, will be used to pay the FDIC, now WM Capital, first and in full. So the judgment itself, according to the contract, if we look at clauses 3.1.7, 3.1.8.3, will be paid first and in full. If there's any balance out of that sale, judicial sale, those monies will be given over to the debtor in this case, the Almeidas and the company Tenerife. Now, in consideration, we have reciprocal obligations under this contract. So the FDIC, now WM Capital, is receiving this form of payment through the assignment of the dissolved, an injunction that it obtained against the Almeidas and Tenerife for divesting certain assets. The contract terms are clear, specific. Now, the appellants raised two causes of action. Originally, the Almeidas filed for co-owner's redemption, which is part of what was being discussed, whereby co-owners to a property have the right to redeem and get back the property that one of the co-owners sells to a third party under Puerto Rico law, the civil court of Puerto Rico. In the meantime, in the alternative, in the alternative, the Almeidas claim that the agreement was breached by the FDIC because it did not foreclose promptly. Those are two specifically as to the co-owner's redemption, or rather, evidently, the district court dismissed the causes of action filed by the Almeidas and granted WM Capital's specific performance claim. But as to the co-owner's redemption, evidently, in the briefs, the Almeidas raised a case of Ortiz-Roberts, and it talks about the trusts. The particular, in that case of the Supreme Court, the Ortiz-Roberts case, talks about trusts. I believe Appalentz discussed trust initially. That case is not applicable. That case deals with beneficiaries to a trust. In this case, we don't have a trust. We have an assignment for payment. And specifically, your honors, as you were mentioning before, the relationship created by the contract is one of debtor and creditor. There is no co-ownership. The debtor wants to pay its debt, turns over property to the creditor. The creditor sells, liquidates the property, gets with that money, with those proceeds, uses it to pay what's owed. And if anything, there's a balance, then they give it back to the debtor. If there's no balance, then there may be a deficiency. And the creditor, in that case, will continue suing the debtor and collect the rest of the money. So yes, under Puerto Rico, there is no property in a purchase and sale. There is no co-ownership in the example used by Judge Calleja. There is no right to property between a purchaser and seller. There isn't. So let me ask you, because as I understand it, in Puerto Rico, if you and I own a business together as co-owners, co-holders, and you go to sell your half of the business for $10,000, I've got a right to go redeem it by paying $10,000 plus expenses to that purchaser and getting the whole business moving myself. Correct. As long as you follow the letter of the law and you notify of your intent within nine days. Yeah. So I think what they're saying, and I don't understand their argument as to the contract, but I think what they're saying is, the bank also sold you its interest in the mortgage notes, which they deem to be co-holders. So they're basically saying the mortgage notes under this transaction became like the business in the example I just gave you, and the court below rejected that. Could you explain why that is? I do also have problems understanding the argument raised by Appalachians, to be honest with you. But essentially, there cannot be co-ownership in this particular case, because number one, the district court looked at the available law. There is no Supreme Court on point saying that an assignment for payment is analogous to co-ownership. There isn't. What is out there is the Spanish treatises that are regularly used by the Supreme Court of Puerto Rico. And the Spanish treatises specifically hold, understand that there is no co-ownership in an assignment for payment under Article 1129 of the Civil Code of Puerto Rico. There is not. Also, your honors, I believe the district court looked at the case of Ortiz Roberts, and the Supreme Court there specifically said that the ultimate purpose of a trust, because that case was about trust and the beneficiaries to a trust, the ultimate purpose there was to administrate the property for beneficiaries of the trust. They were going to hold that property. They were going to administer it. They were going to rent the property out and benefit from that. In this particular case before the court in the assignment for payment, the intent of the parties is to liquidate the notes. They're not going to keep these notes and hold them together. They are going to foreclose on the mortgage notes. They're going to take and liquidate those eventually. And if they hold it together for a time, the contract itself says that they will dissolve the whatever co-property after they acquire the property, if nobody buys it, and will only hold it for 12 months. So, the intent of the parties here is liquidation of property and payment. That is it. I hope I answered your question, Your Honor. As to the breach of contract claim, very briefly, it is very important to notice that the standard of review for evidentiary determinations by the district court is abuse of discretion. It is not de novo. And this is important, Your Honors, because the Almeidas and Teneriffas in their brief seem to suggest that the standard of review for evidentiary determinations is de novo. In their reply briefs, they present—they attempt to present and bypass and completely put aside the determinations of evidence, of material facts that are not in controversy, reached by the standard of review. They completely, since the opening brief, the reply briefs, they did not address Judge Woodcock's determinations of fact, of material facts not in controversy. In their opening briefs, they merely mention some evidence. They don't cite to the record. They waive the arguments right off the bat from their opening briefs. Not only that, but—so, essentially, what we're trying to say, Your Honor, is that the determinations of material facts reached by the district court should just stand as they are, because they have been—they have not been controverted or otherwise opposed in any manner or way. Finally, as to the issue of the determination made by the Intermediate Court of Appeals of Puerto Rico, this is the res judicata issue and the collateral estoppel issue and all those issues. The Almeidas and Tenerife did not raise that issue in their opening brief. It is not there. The Almeidas and Tenerife did not raise that issue in their reply briefs. They raised it in an informative motion and attempting to discuss the determination made by a state court. Now, right off the bat, they waive the argument. But, more importantly, Your Honor, is that Judge Woodcock looked at the issue, reviewed the resolution at issue, and determined that there was no res judicata. There cannot be res judicata in the state court case. Now, remember, we're talking about four which is a senior loan, and we're talking about three junior loans, which are the Kennedy notes. These are in two separate cases, the Kennedy case and the GMAC case. Now, we're talking about the GMAC case. Counsel, let me ask you a question. The four mortgage notes, notwithstanding anything that has happened in this case, when Mr. Almeida had an interest in those four mortgage notes, would he have been considered a community property person? With his brother, Francisco. So, would he and his brother have had a right of redemption? Between each other. Originally. When, before the FDIC stepped in, before the FDIC reached the agreement to satisfy the judgment? Yes. Yes. Together, they together held property in common for the purpose of benefiting from it. Okay, and so you're saying that what has transformed that original mortgage interest from a redemption right into just a payment right is everything that has happened since the FDIC got involved? The... What transformed it from something that you are acknowledging to something now that you're saying is only an assignment of payment? So, what we're saying is that right, you have to think about the parties and who the parties are here. So, that right belongs to them internally. Externally, you have a creditor outside, and he has nothing to do with them. What they gave to the FDIC is an assignment for payment, which is totally different, totally isolated, totally independent from those, that internal relationship between those parties. So, it wasn't really transformed into anything. That just remains the same between themselves. The FDIC just came in and obtained a judgment against one and said, you need to pay me. You show you have no money. You transferred your part of your assets, or you attempted to transfer part of your assets to your brother Francisco. So, now I'm going to involve Francisco. I'm going to bring you together, and I'm going to require that you assign to me your interest for liquidation on that property. That's why you have your honor. You have Juan, who is the object of the judgment issued by Judge Mezosa for $2.8 billion. You have in the agreement, you have Francisco, his brother. The judgment is not against Francisco. It's against Juan. You have Francisco, and you have Tenerife, which is the company owned by both, where the money was transferred. So, essentially, the agreement is essentially recognizing a right under the Civil Code of Puerto Rico, Article 1129. That is what's happening here. I hope I answered your question, Your Honor. I believe we'll have to study it. All right. Thank you. Mr. Barrios, rebuttal. Again, Attorney Devento de Rios Perez, on behalf of plaintiffs. On point, the FDIC can only acquire what its debtor had, which is Juan, so he cannot acquire anything else or different. So, to answer Justice Thompson's question, what Juan had, who is the debtor and debtor, is what was transferred in a 50% undivided interest. Now, we've been cited authority from the other side that the Spanish treatises say that in a liquidation context, the right of redemption falls out, doesn't apply. So, what is your answer to that? Now, the answer to that is the case on point is Ortiz-Roberts versus Ortiz-Roberts, Supreme Court of Puerto Rico, which specifically decides that community property to which redemption applies is any sharing of any of the sticks of the bundle of rights called property. So, is that consistent with the treatises that have been cited, or is it an exception, or does it overrule them? How do you view that case in the context of what's been cited by the other side? The Ortiz-Roberts case deals with the concept of property and is reconcilable because the Supreme Court of Puerto Rico specifically cited as an example from the treatises themselves a situation where a farmer owns a farm, land, and somebody else has the harvest and decided that is sharing of rights, that is community property, to which redemption applies. So, it is congruent. The Supreme Court of Puerto Rico reconciled them both, and it's explicit in the case of Ortiz-Roberts. May I have, have I answered your question, Justice Howard? Thank you, yes. You still have a couple minutes. Okay, it is important for the court to be aware that there are inconsistencies in the judgment that cannot be reconciled so that the judgment can be executed. The minimum bid price for the public sale of the four mortgage notes is over six million dollars, while the court ordered that the only public sale has a minimum and exclusive minimum bid of something over three million dollars. Specifically, I can cite three million eight hundred and fifty in appendix page four six six three, while the aggregate minimum price for all the notes is six million two hundred and thirty a thousand dollars. That is one obstacle, and it cannot be changed by the court, it cannot be against or damaging the mortgagor, who is not present in the case. So, why do you have standing to even address it? Because it is... It doesn't affect you, it affects only the mortgagor. No. I do have standing, I have a judgment that I can foreclose on. The court order, as established by the court, cannot be executed. So, I am being deprived of the right to execute the judgment by the judgment entered by Judge Woodcock, because it does not meet the minimum price. And it also appears to require that both cases be consolidated for public sale, which is contrary to article 94 of the mortgage law of Puerto Rico, which is title 30 of laws of Puerto Rico. Why does the court, why does the law prohibit the consolidation? Because it makes disappear the ranking, the priority ranking of the different mortgages, if you consolidate everything into one place, particularly when the mortgages do not belong to the same person, such as Tenerife on the one side and Medes on the other. Suppose the sale goes forward and the mortgagor has no complaints? I don't have a... Excuse me. I cannot guess that or assume that somebody else has rights. I must respect them. I cannot just step over everybody else's rights, especially those with whom I have contracted, and the mortgage is a contract between us. I must honor that contract. It's called good faith and honesty. I cannot disregard that. And that is exactly what we've been demanding from WM Capital from day one. Honesty, good faith, and adherence to the contract. And finally, Justices, WM Capital waived many of the issues on appeal by not confronting them. We addressed those in our reply brief. We may have a couple of seconds, but that would be all. We request that the judgment be reversed. And if it is sustained, the controversy would not have been resolved. It would have been perpetrated, which is contrary to the power of Article 3 of the Judiciary of the United States. Thank you very much. Thank you, counsel. That concludes the argument in this case. Attorney Berrios-Perez, Attorney Berrios-Falcone, and Attorney Maiato, you should disconnect from the hearing at this time.